UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSEPH ALAN BROWN,

    Plaintiff,

v.        Case No:   6:17-cv-1399-Orl-18TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Joseph Alan Brown appeals to this Court from the Commissioner of Social Security's final decision to deny his applications for disability insurance benefits and supplemental security income. I have reviewed the record, including the administrative law judge's ("ALJ") decision, the exhibits, hearing transcript, and the joint memorandum submitted by the parties. For the following reasons, I respectfully recommend that the Commissioner's final decision be **affirmed**, pursuant to sentence four of 42 U.S.C. § 405(g).

### Background[1]

Plaintiff was fifty-four years old at the time of the administrative hearing (Tr. 20, 224, 226). He attended two years of college and has past work experience as a pump servicer and construction worker (Tr. 127). On September 18, 2015, Plaintiff applied for benefits under Title II and Title XVI of the Social Security Act, alleging a disability onset date of February 1, 2015 (Tr. 75-76, 224, 226). His claims were denied initially and on

---

[1] The information in this section comes from the parties' joint memorandum filed on April 16, 2018 (Doc. 21).

reconsideration (Tr. 138, 141, 146, 151). At Plaintiff's request, the ALJ held a hearing on December 14, 2016 (Tr. 20-42). The ALJ issued an unfavorable decision on January 12, 2017 (Tr. 118-128). On June 2, 2017, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6). The ALJ's decision became the Commissioner's final decision and this appeal timely followed (Doc. 1). Plaintiff has exhausted his administrative remedies and his case is ripe for review.

## The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the Commissioner's five-step sequential evaluation process which appears in 20 C.F.R. § 416.920(a)(4). The ALJ must determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and at step five, the burden shifts to the Commissioner. Id., at 1241 n.10; Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since his February 1, 2015 alleged onset date (Tr. 120). At step two, the ALJ found that Plaintiff was severely impaired by: rheumatoid arthritis; systematic lupus erythematosus; partial right shoulder tear with impingement; left shoulder rotator cuff tear; emphysema; major depressive disorder; anxiety; adjustment disorder; and a pain disorder (Tr. 120-121). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed

impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) (Tr. 121-122). Before proceeding to step four, the ALJ decided that Plaintiff had the residual functional capacity ("RFC") to,

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with a 30 minute sit/stand option and no: climbing; occasional balancing, stooping, kneeling, crouching, and crawling; no overhead reaching bilaterally; no more than frequent handling and fingering bilaterally; and no concentrated exposure to extreme heat, cold, or respiratory irritants such as dust, fumes, or gases. Mentally, the claimant can perform simple tasks with little variation that take a short period of time to learn (up to and including 30 days). He is able to deal with changes in a routine work setting and can adequately deal with supervisors but have only occasional contact with coworkers and no contact with the general public.

(Tr. 122-126). The ALJ found Plaintiff unable to perform his past relevant work (Tr. 126-127). But, at step five the ALJ concluded, based upon the testimony of a vocational expert ("VE"), that there were jobs in the national economy–like blade balancer, route clerk, marker II–that Plaintiff could perform and therefore, he was not disabled (Tr. 127-128).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence, the

district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

A. The ALJ's Rejection of Dr. Kollmer's Opinon and Plaintiff's Subjective Complaints Was Based on Substantial Evidence

Plaintiff argues that the ALJ committed reversible error when he rejected Plaintiff's subjective complaints about his ability to reach and perform repetitive movements, and the opinion of orthopedic surgeon, Dr. Charles Kollmer (Doc. 21 at 19-22).

*Plaintiff's Subjective Complaints*

"In order to establish a disability based on [the plaintiff's] testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); Singleton v. Comm'r Soc. Sec., No. 6:12-cv-683-Orl-GJK, 2013 WL 5236678, at *5 (M.D. Fla. Sept. 17, 2013). "If the ALJ discredits subjective testimony,

- 4 -

he must articulate explicit and adequate reasons for doing so." Wilson, 284 F. 3d at 1225.

Plaintiff contends that he has a significant limitation in his ability to reach that the ALJ should have accounted for in Plaintiff's RFC assessment. The ALJ rejected Plaintiff's testimony on this issue as being inconsistent with the evidence that Plaintiff rides a motorcycle to get around (Tr. 124). Plaintiff argues that the ALJ's reasoning is flawed because the reviewer did not determine the frequency with which Plaintiff rode his motorcycle (Doc. 21 at 20). At the hearing, Plaintiff testified that he has significant difficulty reaching in front of him and that although he can type on a keyboard, it would have to be placed directly in front of him (Tr. 32). Plaintiff also testified about an incident where he tried to push an eight ounce box of frozen fish into the freezer and his impairment caused him to drop to his knees with a stabbing pain (Tr. 29-30). The ALJ rejected Plaintiff's testimony and found that it was undermined by his activities of daily living, namely his motorcycle usage. The ALJ also noted that Plaintiff "remains capable of a wide range of activities that involve the use of his hands," like "prepar[ing] meals daily and do[ing] laundry, light cleaning, dishwashing, and light yard work for short periods of time." (Tr. 123-124). The ALJ acknowledged the existence of a September 2015 function report which states that Plaintiff experiences pain while reaching. But, despite the pain, Plaintiff "gets around on a motorcycle" and "goes shopping 2-3 times per week" (Tr. 123). In further analysis, the ALJ wrote:

> The record is significant for bilateral shoulder problems ... The claimant's shoulder issues ... warrant the residual functional of lifting 10 pounds frequently, 20 pounds occasionally, but no overhead reaching. Further the swelling and tenderness in the hands noted in October 2015 and June 2016 justify a limitation to no more than frequent handling or fingering. However, the record is inconsistent with the claimant's testimony of further limitations. Although the claimant testified to significant difficulty with reaching in front of him, that

- 5 -

> testimony is inconsistent with the record in that the claimant's [sic] gets around by riding a motorcycle which requires reaching out to hold handle bars.

(Tr. 124). Thus, the ALJ articulated specific and adequate reasons for rejecting Plaintiff's subjective complaints, and the ALJ's decision on this issue should not be disturbed on appeal. Fox v. Astrue, No. 5:09-cv-376-Oc-GRJ, 2010 WL 3220217, at *13 (M.D. Fla. Aug. 13, 2010) (M.D. Fla. Aug. 13, 2010) ("The ALJ also noted that Plaintiff's daily activities were inconsistent with the alleged severity of his pain and symptoms, particularly citing Plaintiff's activity of riding his new motorcycle … Accordingly, the Court concludes that the ALJ articulated specific and adequate reasons for discrediting Plaintiff's subjective complaints.").

*Dr. Kollmer's Opinion*

Orthopedic surgeon Charles Kollmer treated Plaintiff on at least 6 occasions between July 19, 2016 and December 19, 2016 (Doc. 21 at 5). The doctor is, therefore, a "treating physician. Caplan v. Comm'r Soc. Sec., Case No. 6:15-cv-1926-Orl-CM, 2017 WL 1030875, at *3-4 (M.D. Fla. Mar. 17, 2017) (citing 20 C.F.R §§ 404.1502, 416.902); Loveless v. Colvin, 6:14-cv-01779-LSC, 2015 WL 8002704, at *4 (N.D. Ala. Dec. 7, 2015).

In a July 7, 2016 Medical Source Statement, Dr. Kollmer concluded that Plaintiff's physical disabilities would frequently interfere with his concentration (Tr. 491-493). Dr. Kollmer diagnosed Plaintiff with rheumatoid arthritis and opined that he could work less than four hours in an eight hour work day (Tr. 491). Regarding Plaintiff's reaching limitation, Dr. Kollmer opined that Plaintiff could only occasionally reach, twist and hand write, and that his impairment was expected to last at least 12 months (Tr. 493).

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). Good cause to reject exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir.1991).

When a treating physician's opinion does not warrant controlling weight, the ALJ must still consider the following factors in deciding how much weight to give the medical opinion: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion." Logreco v. Astrue, No. 5:07-cv-80-Oc-10GRJ, 2008 WL 783593, at *10 (M.D. Fla. Mar. 20, 2008).

The ALJ gave Dr. Kollmer's opinion "little weight," explaining

> Dr. Kollmer's opinion is inconsistent with the claimant's testified abilities to lift up to 20 pounds. Further, Dr. Kollmer was the claimant's treating orthopedic surgeon for the rotator cuff tear in the left shoulder and partial tear in the right shoulder. However, the medical findings Dr. Kollmer cited to justify the limitations was simply rheumatoid arthritis, a condition Dr. Kollmer was not treating. Dr. Kollmer did not address any limitations that might result from the conditions he was treating. Thus, Dr. Kollmer's opinion is outside of the scope of the treatment provided. The objective record, discussed above, also does not support the extreme limitations in the opinion form.

(Tr. 125). The record supports these findings. Dr. Kollmer's treatment notes confirm that he treated Plaintiff for a "bilateral shoulder condition," not rheumatoid arthritis (Tr. 567, 570-572, 573). In a July 5, 2016 treatment note, Dr. Kollmer expressly acknowledges that

- 7 -

Plaintiff "is under the care of Dr. [Maria] Vintimilla for rheumatoid arthritis" (Tr. 570). Dr. Vintimilla observed swelling of the MCP and PIP joints of both hands, but noted that both hands and all wrist joints had full range of motion (Tr. 446-447). At a follow up visit in June 21, 2016 (approximately two weeks before Dr. Kollmer issued his restrictive medical source statement), Dr. Vintimilla once again found that despite his joint stiffness, Plaintiff had full range of motion in his wrists, hands, and fingers (Tr. 497).

Thus, there is substantial evidence to support the ALJ's decision to give Dr. Kollmer's opinion little weight and to support the ALJ conclusion that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff's testimony and Dr. Kollmer's opinion are belied by Plaintiff's activities of daily living. See Sanchez v. Colvin, 134 F. Sup. 3d 605, 615-616 (D. Mass. 2015) ("Though Dr. Gottschall averred that Sanchez's abilities are severely limited, Sanchez stated that he was in fact able to … ride motorcycles … thus, the hearing officer was justified in deciding to give it little weight …").

B. The ALJ Properly Relied on the VE Testimony

*Testimony Regarding Required Reasoning Level*

At the hearing, the ALJ posed a hypothetical question to the VE that included all of the limitations in the RFC finding (Tr. 39-40). The ALJ asked the VE to assume a hypothetical individual who was limited to "performing simple tasks with little variation" and who has various other functional limitations (Tr. 38-39). The VE testified that a hypothetical person with Plaintiff's RFC would not be able to perform Plaintiff's past work but could perform the jobs of blade balancer, route clerk, and marker II (Tr. 39). The ALJ asked whether the testimony conflicted with the Dictionary of Occupational Titles ("DOT") (Tr. 40). The VE responded that "the sit stand option, use of a cane, overhead reach,

[and] off task behavior" were not addressed in the DOT, and that his recommendations were based on his 31 years of experience and his knowledge of how the jobs are typically performed (Id.). Aside from identifying the information excluded from the DOT job profile, the VE did not identify any conflict between his testimony and the DOT.

Plaintiff argues that this case must be remanded because there is an unresolved conflict between the VE's testimony and the DOT (Doc. 21 at 26-31). Specifically, Plaintiff's RFC limits him to "simple tasks with little variation that take a short period of time to learn (up to and including 30 days)." (Tr. 22). Plaintiff contends that he cannot perform the jobs of route clerk and marker II because they require a reasoning level of 2, meaning that the claimant must carry out detailed written and oral instructions (Doc. 21 at 30).

Under SSR 00-4p, the ALJ has an affirmative responsibility to ask about possible conflicts between a VE's testimony and the information provided in the DOT. The ruling provides:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p, 2000 WL 1898704, at *4.

Courts in this district have observed that, "pursuant to SSR 00-4p, the ALJ is only required to resolve a conflict between the DOT and the VE's testimony if the ALJ is aware of that conflict." Quinones v. Comm'r of Soc. Sec., No. 6:16-CV-1518-ORL-DCI, 2018 WL 829130, at *3 (M.D. Fla. Feb. 12, 2018); Sollars-D'Annunzio v. Astrue, No. 5:08-CV-80-OC-GRJ, 2009 WL 302170, at *9 (M.D. Fla. Feb. 6, 2009) ("SSR 00-4p only requires the VE to resolve the conflict when he is made aware of the conflict"); Wright v. Comm'r of Soc. Sec., No. 6:12-CV-1640-ORL-31, 2014 WL 982626, at *9 (M.D. Fla. Mar. 12, 2014) ("SSR 00-4p does not require an ALJ to independently investigate a VE's testimony or further interrogate a VE when the VE testifies, as here, that no inconsistency or conflict exists between her testimony and the DOT.").

If there is a conflict between the DOT and the jobs identified by the VE in response to a hypothetical question, the testimony of the VE "trumps" the DOT because "the DOT is not the sole source of admissible information concerning jobs.'" Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999).

Additionally, relevant case law on the issue shows that there is no inherent inconsistency between a limitation to "simple tasks with little variation" and the jobs selected by the VE that require a reasoning level of 2. See Desantis v. Comm'r Soc. Sec., Case No. 2:16-cv-574-FtM-MRM, 2017 WL 4297240, at *4 (M.D. Fla. Sept. 28, 2017) ("Although Plaintiff asserts that the limitation of routine, repetitive tasks conflicts with a reasoning level of two or three, '[m]ost courts which have addressed this issue have held that the requirement of Reasoning Level 2 or 3 is not inconsistent with the ability to perform only simple tasks.'"); Menendez v. Colvin, No. 12-21505-CIV, 2015 WL 1311460, at 3-4 (S.D. Fla. Mar. 23, 2015) (citing Miller v. Comm'r Soc. Sec., 246 F. App'x 660 (11th Cir. 2007); Hurtado v. Astrue, No, 09-60930-CIV, 2010 WL 1850261, at *11 (S.D. Fla.

- 10 -

April 14, 2010) ("Most courts which have addressed this issue have held that the requirement of Reasoning Level 2 or 3 is not inconsistent with the ability to perform only simple tasks."); Marley v. Comm'r of Soc. Sec., No. 8:13-cv-2384-T-CM, 2015 WL 847376, at *4 (M.D. Fla. Feb. 26, 2015) (affirming where ALJ found that even a reasoning level of three is not necessarily in conflict with the plaintiff's limitation to simple work); Gray v. Colvin, No. 3:12cv506/EMT, 2014 WL 1118105, at *8 (N.D. Fla. Mar. 20, 2014) (finding that "even if Plaintiff has the mental RFC to perform only 'simple, routine tasks' and retains the ability to understand, remember, and carry out only very short and simple instructions, these capacities are consistent with a reasoning level of two or three, not a reasoning level of one....")). The ALJ asked the VE to assume a hypothetical individual with a mental limitation of performing simple tasks with little variation, thus the VE testimony controls even if it conflicts with the DOT. See Jones, 190 F.3d at 1229-30 (11th Cir. 1999); Heim v. Comm'r Soc. Sec., No. 6:13-cv-1923-Orl-41KRS, 2015 WL 269060, at *7 (M.D. Fla. Jan. 21, 2015) ("[I]n the present case, the ALJ did ask the VE to assume mental functional limitations, specifically a limitation to simple, routine, repetitive tasks not merely unskilled work.

Thus, I find no error. Alternatively, if the Court were to find that Plaintiff could not perform the jobs of route clerk and marker II, the ALJ could and did find that Plaintiff could also do the work of blade balancer and therefore, any error is at worst, harmless.

*Testimony Regarding Number of Representative Jobs in National Economy*

Plaintiff argues that the VE's assessment of the number of blade balancer and marker II jobs in the national economy is inaccurate and unreliable and the ALJ's reliance thereon was therefore, erroneous (Doc. 21 at 39-42). The VE testified that there were 59,833 blade balancer jobs nationally, 103,301 route clerk jobs nationally, and 73,602

marker II jobs in the national economy (Tr. 39).

The ALJ is permitted to take judicial notice of job information provided by the DOT. Middleton v. Comm'r Soc. Sec., Case No. 6:17-cv-85-ORI-40TBS, 2018 WL 1371246, at *6 (M.D. Fla. Feb. 27, 2018). In doing so, the ALJ may rely solely on the VE's opinion regarding the number of representative jobs that exist in the national economy. Plaintiff has not grounded his objection to the ALJ's use of this information on any concrete reason, such as the possible fallibility of job database software. Aside from a specific challenge to its reliability, the ALJ "is entitled to rely upon the VE without first delving into the details of [his] extrapolations and findings" Id. at *7 (citing Murphy v. Colvin, No. 5:15-cv-97/EMT, 2016 WL 5791412, at *8 (N.D. Fla. Sept. 30, 2016). Plaintiff's attorney had an opportunity to question the VE at the administrative hearing. But, Plaintiff never challenged the VE's qualifications, methodology, or testimony concerning the number of available jobs (Tr. 40-41).

Plaintiff also argues that "the VE testimony that [he] could perform [the marker II] job was inconsistent with the DOT because it requires a constant handling and the ALJ limited the Plaintiff to frequent handling" (Doc. 21 at 41). As explained previously, "if there is a conflict between the DOT and the jobs identified by a vocational expert in response to a hypothetical question, the testimony of the vocational expert 'trumps' the DOT because 'the DOT is not the sole source of admissible information concerning jobs.'" Jones at 1229-30.

Accordingly, I respectfully recommend that all of Plaintiff's objections to the ALJ's decision be overruled.

## Recommendation

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the

Commissioner's final decision in this case be **AFFIRMED,** and that the Clerk be directed to **ENTER** judgment and **CLOSE** the file.

### Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida on June 13, 2018.

*[signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record